UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DENNIS RAY HOWIE,

           Petitioner,

        v.

RICHARD SUBIA,

           Respondent.

No. 2:07-CV-453-FVS

ORDER GRANTING
PETITIONER'S REQUEST FOR
AN EVIDENTIARY HEARING

**DENNIS RAY HOWIE** was convicted in Amador County, California, Superior Court of the crime of knowingly possessing a controlled substance in a state prison. He is serving a prison term of 25 years to life. He has filed a petition for a writ of habeas corpus. He is represented by Ralph H. Goldsen. His custodian is represented by Justin P. Riley.

**BACKGROUND**

On October 12, 2000, Dennis Ray Howie was incarcerated in a prison in the State of California. His wife visited him. After the visit, Correctional Officer Edward Sauceda searched him. Based upon what Officer Sauceda observed, he suspected Mr. Howie had hidden contraband in his rectum. As a result, Officer Sauceda placed him in a cell; intending to keep him there until he had a bowel movement. Mr. Howie asked to urinate. Officer Sauceda says that while Mr. Howie stood in front of a toilet, he retrieved a bindle of marijuana from

ORDER - 1

his anus and attempted to flush the bindle down the drain.  He was
unsuccessful because a correctional officer had turned off the supply
of water to the toilet.  Officer Sauceda summoned assistance.  A
number of officers appeared.  Several observed fecal material upon Mr.
Howie's hands.  Officer Sauceda was one.  A Sergeant Franklin was a
second.  Officer David Collins was a third.  Officer Collins escorted
Mr. Howie to the infirmary, where he was examined by a medical
technician.  Officer Sauceda seized the bindle and reported the
incident.  On March 7, 2001, the Amador County district attorney filed
a complaint in superior court charging Mr. Howie with knowingly
possessing a controlled substance in a state prison.  A judge
appointed attorney Michael Rooney to represent Mr. Howie.  However,
Mr. Howie was not satisfied with Mr. Rooney.  As a result, he asked
for a new attorney.  A judge appointed Joseph Scoleri.  Mr. Howie was
not satisfied with his second attorney.  Nor was he satisfied with his
third attorney, Helen Page, or his fourth attorney, Patrick Keene.
The repeated changes of counsel slowed pre-trial proceedings.  The
changes may not have been the only circumstance that delayed trial,
but they contributed significantly to the delay.  Sixteen months after
the district attorney filed the complaint, Mr. Howie's case still had
not gone to trial.  A judge determined the delay violated Mr. Howie's
right to a speedy trial as guaranteed by state law.  Consequently, on
July 30, 2002, the judge dismissed the charge without prejudice.  The
district attorney refiled a complaint.  Ms. Page was reappointed as
Mr. Howie's attorney.  The relationship was short-lived.  She asked to
be relieved as his attorney due to irreconcilable conflict.  Mr. Howie

ORDER - 2

agreed with her assessment of the relationship.  A judge granted Ms. Page's motion.  Not long thereafter, he appointed Allan Dollison to represent Mr. Howie.  Mr. Dollison was his fifth attorney.  Mr. Howie asked to act as co-counsel.  A judge authorized him to do so.  Mr. Howie filed a number of motions without assistance from Mr. Dollison.  One was a request for review of the personnel files of three correctional officers.  The Attorney General of the State of California opposed Mr. Howie's motion on the ground he had failed to establish good cause for the relief he sought.  A judge denied the motion.  Mr. Howie's case went to trial on December 16, 2002.  The jury found him guilty and, in a separate proceeding, further found he had a number of prior convictions that counted as "strikes" for purposes of California's "three strikes law."  The judge who presided over his trial sentenced him to prison for a term of 25 years to life. He appealed.  The state Court of Appeal affirmed his conviction and sentence in a lengthy opinion.  The state Supreme Court denied review. Mr. Howie filed habeas petitions with both the state Court of Appeal and the state Supreme Court.  Both courts summarily denied his state habeas petitions.  Thereafter, he filed a petition for a writ of habeas corpus in federal court.  28 U.S.C. § 2254.  He challenges both his conviction and sentence.  The Attorney General for the State of California has filed an answer on behalf of Mr. Howie's custodian, the respondent herein.  The Attorney General admits Mr. Howie has exhausted his state remedies with respect to five federal claims.

**RIGHT TO COUNSEL**

A judge authorized Mr. Howie to act as Mr. Dollison's co-counsel.

ORDER - 3

However, the judge did not warn Mr. Howie that if he performed any of the functions of an attorney without Mr. Dollison's assistance, he would, in effect, be waiving his right to be represented by counsel with respect to those functions.  Mr. Howie alleges he filed a number of motions without Mr. Dollison's assistance.  Mr. Howie argues the issues he raised in those motions were critical to his defense.  He claims the judge should have obtained a waiver of counsel before allowing him to raise those issues without Mr. Dollison's assistance, and that, by failing to obtain a waiver, the judge deprived him of his Sixth Amendment right to counsel.  The state Court of Appeal ruled the judge did not violate the Sixth Amendment.  Mr. Howie takes issue with the ruling.  He is entitled to relief under 28 U.S.C. § 2254(d)(1) if the Court of Appeal's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *Thaler v. Haynes*, --- U.S. ----, 130 S.Ct. 1171, 1173, --- L.Ed.2d ---- (2010) (per curiam) (hereinafter "*Haynes*").  "A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court."  130 S.Ct. at 1173.  *Haynes* is instructive in that regard.

Anthony Haynes was charged in a Texas court with the crime of murder.  Two judges presided over jury selection.  One was present when the attorneys questioned prospective jurors individually.  Another was present when the attorneys exercised peremptory challenges.  The prosecutor struck an African-American juror.  Mr. Haynes' attorney objected based upon *Batson v. Kentucky*, 476 U.S. 79,

ORDER - 4

106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  The prosecutor justified his challenge based upon the juror's demeanor.  The second judge overruled the objection despite the fact he had not been present when the attorneys individually questioned the jurors.  Mr. Haynes was convicted.  130 S.Ct. at 1172.  Texas courts affirmed his conviction and denied his state habeas petition.  130 S.Ct. at 1172-73.  Mr. Haynes filed a petition for a writ of habeas corpus in federal court. 130 S.Ct. at 1173.  The district judge denied the petition.  He observed that the Supreme Court "had never held that the deference to state-court factual determinations that is mandated by the federal habeas statute is inapplicable when the judge ruling on a *Batson* objection did not observe the jury selection."  130 S.Ct. at 1173. The Fifth Circuit reversed.  In doing so, it said, "an appellate court applying *Batson* arguably should find clear error when the record reflects that the trial court was not able to verify the aspect of the juror's demeanor upon which the prosecutor based his or her peremptory challenge."  130 S.Ct. at 1173 (internal citation omitted).  The Supreme Court granted certiorari.  The issue was "whether any decision of [the Supreme] Court 'clearly establishes' that a judge, in ruling on an objection to a peremptory challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), must reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror's demeanor on which the explanation is based."  130 S.Ct. at 1172.  The Fifth Circuit had held Supreme Court precedent clearly established such a rule.  The Fifth Circuit relied upon two cases.  One was *Batson*

ORDER - 5

itself.  The Supreme Court rejected the Seventh Circuit's interpretation of *Batson*:

> [W]here the explanation for a peremptory challenge is based
> on a prospective juror's demeanor, the judge should take
> into account, among other things, any observations of the
> juror that the judge was able to make during the voir dire.
> But *Batson* plainly did not go further and hold that a
> demeanor-based explanation must be rejected if the judge did
> not observe or cannot recall the juror's demeanor.

*Haynes*, 130 S.Ct. at 1174.  The other case upon which the Fifth Circuit relied was *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).  Again, the Supreme Court rejected the Fifth Circuit's interpretation:

> The prosecutor in that case [*i.e., Snyder*] asserted that he
> had exercised a peremptory challenge for two reasons, one of
> which was based on demeanor (*i.e.*, that the juror had
> appeared to be nervous), and the trial judge overruled the
> *Batson* objection without explanation.  . . .  We concluded
> that the record refuted the explanation that was not based
> on demeanor and, in light of the particular circumstances of
> the case, we held that the peremptory challenge could not be
> sustained on the demeanor-based ground, which might not have
> figured in the trial judge's unexplained ruling.  . . .
> Nothing in this analysis supports the blanket rule on which
> the decision below appears to rest.

*Id.* at 1174-75.

Unlike *Haynes*, this case does not involve peremptory challenges. Nevertheless, *Haynes* is instructive because it helps explain how a habeas court should determine whether federal law is clearly established for purposes of § 2254(d)(1).  The habeas court's first task is to identify the rule upon which the petitioner is relying.

ORDER - 6

*Haynes*, 130 S.Ct. at 1172.  The habeas court's second task is to review relevant Supreme Court cases.  The essential inquiry is whether the rule in question is embodied in one of the Supreme Court's holdings.  *Id.* at 1173.

Mr. Howie argues a judge has a duty to obtain a waiver of counsel from a defendant before allowing him to act as co-counsel with his attorney.  As authority, he relies upon *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and its progeny. *Faretta* is, of course, the Supreme Court's "foundational 'self-representation' case."  *Indiana v. Edwards*, 554 U.S. 164, ---, 128 S.Ct. 2379, 2383, 171 L.Ed.2d 345 (2008) (hereinafter "*Edwards*"). There, the Supreme Court "held that the Sixth and Fourteenth Amendments include a 'constitutional right to proceed without counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'"  *Id.* (quoting *Faretta*, 422 U.S. at 807, 95 S.Ct. 2525).  Mr. Howie is not alleging he was denied the right to represent himself. Indeed, he declined to represent himself during the Fall of 2002, saying:

> Co-counsel status is much better th[a]n pro per with advisory counsel that's for all [sic] purposes of appeal. Because then if counsel of record doesn't do his job, then the burden falls upon the counsel's shoulder because he was ineffective and inadequate.  I wouldn't have that claim if I was pro per.

(Opinion of the Court of Appeal at 17.)  Instead of representing himself, Mr. Howie wanted to act as Mr. Dollison's co-counsel.  The judge was not obligated to allow this arrangement.  An accused does not have a Sixth Amendment right to "'hybrid' representation."

ORDER - 7

*McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).  The judge could have required Mr. Howie to choose between representing himself and being represented by an attorney.  The judge did not force Mr. Howie to make that choice.  Instead, the judge accommodated Mr. Howie's desire to act as Mr. Dollison's co-counsel.  Mr. Howie argues the judge should have obtained a *Faretta* waiver before allowing him to do so.

The federal circuit courts of appeal are split with respect to whether and, if so, under what circumstances a judge must provide *Faretta* warnings to an accused who seeks some form of hybrid representation.  *See, e.g., United States v. Cromer*, 389 F.3d 662, 680-81 (6th Cir.2004) (collecting cases).  The Ninth Circuit has adopted the rule advocated by Mr. Howie.  In *United States v. Kimmel*, 672 F.2d 720, 721 (9th Cir.1982), the circuit court said, "When the accused assumes functions that are at the core of the lawyer's traditional role, . . . he will often undermine his own defense.  Because he has a constitutional right to have his lawyer perform core functions, he must knowingly and intelligently waive that right."  In *United States v. Turnbull*, 888 F.2d 636, 638 (9th Cir.1989), the circuit court reiterated this rule, "A district judge may allow 'hybrid representation,' in which the accused assumes some of the lawyer's functions, under certain circumstances.  If the defendant assumes any of the "core functions" of the lawyer, however, the hybrid scheme is acceptable only if the defendant has voluntarily waived counsel."  That may or may not have happened here.  Thus, were Mr. Howie's right-to-counsel claim governed by *Kimmel* and *Turnbull*, he

ORDER - 8

might be entitled to an evidentiary hearing.  However, the fact the
Ninth Circuit has adopted this rule does not mean it is clearly
established law for purposes of § 2254(d)(1).  *Renico v. Lett*, ---
U.S. ----, ----, 130 S.Ct. 1855, 1865-66, 176 L.Ed.2d 678 (2010).  The
issue is whether the rule is embodied in a Supreme Court holding.  It
is not.  Although the Supreme Court has held a defendant has a
constitutional right to proceed without counsel when he voluntarily
and intelligently elects to do so, *Edwards*, 554 U.S. at ---, 128 S.Ct.
at 2383, the Supreme Court has rejected the proposition a defendant
has a right to hybrid representation.  *McKaskle*, 465 U.S. at 183, 104
S.Ct. 944.  Perhaps because the Supreme Court has rejected the right
to hybrid representation, it has yet to decide whether a judge has a
duty to obtain a waiver of counsel from a defendant before allowing
him to act as co-counsel with his attorney.  This remains an open
issue; one for which no clearly established Federal law exists.

**SPEEDY TRIAL**

Officer Sauceda seized a bindle of marijuana on October 12, 2000.
The district attorney filed a complaint in superior court on March 7,
2001.  A judge dismissed the charge without prejudice on July 30,
2002.  The district attorney refiled the charge the same day.  Prior
to trial, Mr. Howie moved to dismiss on the ground the delay deprived
him of his Constitutional right to a speedy trial.  A judge denied his
motion.  Trial began on December 16, 2002.  On direct appeal, Mr.
Howie argued the superior court judge erred by denying his motion.
The state Court of Appeal disagreed.  Mr. Howie argues the Court of
Appeal unreasonably applied clearly established Federal law to the

facts of his case.[1]

Slightly more than 26 months elapsed between the date upon which Officer Sauceda seized the bindle of marijuana (October 12, 2000) and the date upon which jury selection began (December 16, 2002).  When analyzing the delay, the state Court of Appeal did not cite *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court's seminal Sixth Amendment speedy trial case.  The state Court of Appeal's failure to do so is immaterial.  A state court need not cite relevant Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).  Here, the Court of Appeal plainly was aware of *Barker*.  Although it did not cite the case, it analyzed the factors a court must consider when determining whether a constitutional violation has occurred.  They are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.* at 530, 92 S.Ct. 2182.  The Court of Appeal concluded Mr. Howie was not deprived of his Sixth Amendment

[1]Mr. Howie does not allege he was deprived of due process of law by the approximately five-month delay between Officer Sauceda's seizure of the bindle and the district attorney's filing of the complaint.  *Cf. United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ("the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused").

ORDER - 10

right to a speedy trial because only four of the 26 months that elapsed between October 12, 2000, and December 16, 2002, could be characterized as unreasonable periods of delay.  In reaching that conclusion, the Court of Appeal decided Mr. Howie was responsible for much of the delay and, in any event, he suffered no prejudice.  Mr. Howie maintains the Court of Appeal's ruling represents an unreasonable application of the *Barker* test to the facts of his case.

Under § 2254(d)(1), the issue is not whether the Court of Appeal was incorrect, but whether it was unreasonable.  *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (internal punctuation and citation omitted) (hereinafter "*Mirzayance*").  Proving a state court was unreasonable is substantially more difficult than proving it was incorrect.  *Id.*  And, here, the burden upon Mr. Howie is heavier still.  *Barker* requires courts to weigh four factors when assessing alleged speedy trial violations.  This is a general standard.  When a state court applies a general standard, its determinations are entitled to even more latitude.  *Renico*, --- U.S. at ----, 130 S.Ct. at 1864; *Mirzayance*, 556 U.S. at ----, 129 S.Ct. at 1420.

The state Court of Appeal made a number of determinations in rejecting Mr. Howie's speedy trial claim.  He takes issue with two of them.  The first is the Court of Appeal's determination that he was responsible for much of the delay.  As will be recalled, he was represented by five attorneys between the Winter of 2001 and the Fall of 2002.  The Court of Appeal examined each change of representation. Mr. Rooney was Mr. Howie's first attorney.  Mr. Rooney represented him

ORDER - 11

from March until May of 2001.  Mr. Howie claimed he wasn't diligent.
The Court of Appeal disagreed.  As it viewed the record, the problem
wasn't Mr. Rooney's lack of diligence, but Mr. Howie's refusal to
cooperate with him.  Mr. Scoleri was Mr. Howie's second attorney.  Mr.
Scoleri represented him for approximately one month.  A superior court
judge relieved Mr. Scoleri of his duties as Mr. Howie's attorney.  Mr.
Howie argued this was evidence of a lack of diligence.  The Court of
Appeal rejected this argument.  The judge acted as he did, said the
Court of Appeal, because the "defendant could not get past his
perceptions that hindered him from cooperating with counsel."
(Opinion of the Court of Appeal at 7.)  Ms. Page was Mr. Howie's third
attorney.  She worked for a law firm that provided public defender
services to the Amador County.  She represented him from June until
September or October of 2001.  He claimed she quit because Amador
County would not fulfill its duty to pay for public defender services.
The Court of Appeal rejected this allegation; concluding, instead, she
ceased representing Mr. Howie because she terminated her relationship
with the law firm that provided public defender services.  Mr. Howie
represented himself from roughly October of 2001 until January of
2002.  At that point, he asked to be represented by counsel.  A judge
appointed Mr. Keene.  This was his fourth attorney.  Mr. Keene
represented him from January of 2002 until July of 2002.  The Court of
Appeal agreed Mr. Keene had not been diligent.  It attributed two
months delay to his lack of diligence.  Ms. Page represented Mr. Howie
for a second time between August and October of 2002.  It was an
unhappy relationship.  She moved to withdraw and Mr. Howie moved to

ORDER - 12

relieve her of her duties.  A judge granted both motions.

Nevertheless, as the Court of Appeal pointed out, the judge did not

question the quality of her representation.  Mr. Dollison was Mr.

Howie's fifth attorney.  He represented Mr. Howie through trial and

sentencing.  On appeal, Mr. Howie "claim[ed] he had four ineffective

lawyers[.]"  (Opinion of the Court of Appeal at 27.)  Not so, said the

Court of Appeal.  "[T]he record shows [Mr. Howie] was the common

denominator.  He made it impossible for anyone to represent him,

because he wanted to control the defense.  He refused their advice and

anyone who did not succumb to his dominance was accused of

incompetence."  *Id.*  This is a plausible interpretation of the record.

Mr. Howie repeatedly filed motions requesting new counsel.  The

superior court judges who heard the motions evaluated Mr. Howie's

relationship with each attorney.  With the exception of Mr. Keene, the

judges did not criticize the attorneys.  They attributed the conflict

to Mr. Howie.  Given Mr. Howie's perpetual conflict with his

attorneys, and given the absence of evidence the attorneys were at

fault, it was not unreasonable for the Court of Appeal to determine

that it was Mr. Howie, rather than his attorneys, who was

responsible.[2]

The preceding determination is one of two that Mr. Howie

challenges.  The other is the Court of Appeal's determination that the

delay did not prevent him from presenting exculpatory evidence.  At

---

[2]This leaves Mr. Howie's allegation that Amador Count
refused to pay Ms. Page.  There is no evidence in the record to
support the allegation.

ORDER - 13

trial, he called Correctional Officer David Collins as a defense witness.  He hoped to establish through Officer Collins' testimony that he was handcuffed behind his back, which would have made it difficult for him to perform the maneuver described by Officer Sauceda.  According to Mr. Howie, Officer Collins' testimony was inconsistent.  During direct examination, Officer Collins indicated Mr. Howie's hands were cuffed behind his back (which would have undermined Officer Sauceda's account), but, during cross-examination, he retreated from this position.  He conceded Mr. Howie's hands might have been cuffed in front.  In Mr. Howie's opinion, the change in Officer Collins' testimony diminished his credibility.  Mr. Howie blames Officer Collins' inconsistency upon the passage of time.  The Court of Appeal reviewed Officer Collins' testimony on appeal.  While it noted he had been unable recall certain aspects of the incident in question, the Court of Appeal concluded Mr. Howie had suffered no prejudice as a result.  The Court of Appeal did not explain this conclusion in any detail.  Its failure to do so does not undermine its ultimate ruling.  "The factors identified in *Barker* 'have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.'"  *Vermont v. Brillon*, 556 U.S. ----, ----, 129 S.Ct. 1283, 1292, 173 L.Ed.2d 231 (2009) (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. 2182).  The state Court of Appeal engaged in the balancing process mandated by *Barker*; analyzing each period of delay.  As explained above, the Court of Appeal plausibly decided Mr. Howie caused much of the delay; so much so that, when all was said and done, there were only four months with respect to which he had reason

to complain.  When a defendant causes much of the delay in bringing
his case to trial, and when only four months of the delay are
unreasonable, the defendant has not been deprived of Constitutional
right to a speedy trial.  Consequently, it was not unreasonable for
the Court of Appeal to conclude the State of California did not
violate his right to a speedy trial as guaranteed by the Sixth and
Fourteenth Amendments.

**MEDICAL TECHNICIAN**

Officer Sauceda was the only person to testify he saw Mr. Howie
retrieve the bindle.  However, other correctional officers said they
observed fecal material on Mr. Howie's hands.  Their testimony
corroborated Officer Sauceda's account of the incident and connected
Mr. Howie to the bindle.  Officer Collins escorted Mr. Howie to the
infirmary after the incident.  If the medical technician examined Mr.
Howie's hands, and if the technician did not see fecal material on
them, then the technician's observation would have tended to rebut the
officers' testimony.  The technician prepared a report concerning the
examination.  Mr. Howie does not allege the report states the
technician inspected his hands.  Although Mr. Dollison did not call
the technician as a witness, he did offer the report as an exhibit.
Presumably, he was hoping to raise doubt with respect to whether the
technician observed feces on Mr. Howie's hands.  The respondent argues
Mr. Dollison's failure to interview the technician -- if, in fact, he
failed to do so -- was a reasonable strategy.  In the respondent's
opinion, the technician undoubtedly would have notified the district
attorney that Mr. Dollison had called.  If the technician saw fecal

material on Mr. Howie's hands, Mr. Dollison's contact would have provided the district attorney with another witness to bolster his case.  If the technician did not see fecal material, the contact would have given the district attorney time to prepare for the issue at trial.  The most sensible course of action, says the respondent, is to do what Mr. Dollison attempted to do:  present the technician's report at trial and point out it contained no reference to fecal material on Mr. Howie's hands.  The flaw in Mr. Dollison's strategy -- if, in fact, that was his strategy -- was that he did not properly authenticate the technician's report.  Consequently, the judge refused to admit it into evidence.  Mr. Howie alleges Mr. Dollison deprived him of constitutionally effective assistance of counsel by failing to interview the technician and/or offer a properly authenticated report.

Mr. Howie did not raise the issue of ineffective assistance during his direct appeal.  Instead, he presented it to the state Court of Appeal and the state Supreme Court in habeas petitions.  Both courts summarily rejected his ineffective assistance claim.  Since there is no written state decision, a federal court must perform "an independent review of the record." *Pinholster v. Ayers*, 590 F.3d 651, 663 (9th Cir.2009) (en banc) (internal punctuation and citations omitted), *cert. granted sub nom. Cullen v. Pinholster*, No. 09-1088, 2010 WL 887247 (U.S. June 14, 2010).  In this context, "[i]ndependent review of the record is not de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *Id.* (internal punctuation and citation omitted).

ORDER - 16

The test for assessing ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   The test has two components.   First, Mr. Howie must show Mr. Dollison's performance was deficient.   Second, Mr. Howie must show he suffered prejudice as a result.   *Id.* at 687.   The parties agree this two-part test represents clearly established Federal law for purposes of § 2254(d)(1).

Evidence must be authenticated before a judge will admit it. Arguably, then, Mr. Dollison's failure to authenticate the medical technician's report was deficient.   This does not mean Mr. Howie was deprived of effective assistance of counsel.   More is required.   He must demonstrate he suffered prejudice from the judge's decision to exclude the report.   In order to demonstrate prejudice, Mr. Howie "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694, 104 S.Ct. 2052.

Mr. Howie does not allege the medical technician's report indicates the technician examined his hands.   Apparently, the report is silent in that regard.   Its silence limits its probative value.   A rational juror would be unable to infer from a silent report that the technician examined Mr. Howie's hands and found they were clean. Absent evidence in the report indicating Mr. Howie's hands were clean, the report is not inconsistent with the testimony of the correctional officers.   Thus, Mr. Howie suffered no prejudice from the exclusion of

ORDER - 17

the report.

The more difficult issue is whether Mr. Dollison conducted an adequate pretrial investigation.  In *Strickland*, the Supreme Court said, "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  466 U.S. at 691, 104 S.Ct. 2052.  The record is not developed with respect to the scope of the investigation conducted by Mr. Dollison.  It is unclear whether he attempted to interview the medical technician and, if not, why not.  Similarly, if he spoke to the technician, it is unclear what the technician said.  Mr. Howie urges the Court to hold an evidentiary hearing in order to fill the gap in the record.  The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the circumstances in which a habeas petitioner may qualify for an evidentiary hearing in federal court.  28 U.S.C. § 2254(e).  However, none of the AEDPA's limitations applies here.  Mr. Howie presented his ineffective assistance claim to the state Court of Appeal and the state Supreme Court.  Neither held a hearing.  Since they declined the opportunity to develop a factual record in state court, he is not barred from obtaining an evidentiary hearing in federal court.  *See Jones v. Wood*, 114 F.3d 1002, 1012-13 (9th Cir.1997).  *Cf. Howard v. Clark*, 608 F.3d 563, 573 n.5 (9th Cir.2010) (quoting, with approval, from *Jones*).  Of course, the absence of a statutory bar does not mean the Court must hold a hearing.  In order

ORDER - 18

to qualify, Mr. Howie must establish that a hearing could enable him to prove factual allegations which, if accurate, would entitle him to habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

As the record now stands, the Court does not know what the medical technician would have said had Mr. Dollison interviewed him (assuming, of course, Mr. Dollison failed to do so). Perhaps the technician examined Mr. Howie's hands; perhaps not. Knowing what the technician would have said is essential to applying the *Strickland* test. If he examined Mr. Howie's hands and did not observe any fecal material, then, perhaps, Mr. Dollison's failure to interview him and call him as a witness deprived Mr. Howie of constitutionally effective assistance of counsel. Given the importance of knowing what the technician would have said, the Court will grant Mr. Howie's request for an evidentiary hearing. However, the hearing will be limited to resolving two issues: (1) whether the technician examined Mr. Howie's hands and (2) assuming Mr. Dollison failed to interview the technician, why he failed to do so.

**PERSONNEL FILES**

Mr. Howie filed a motion asking a superior court judge to review the personnel files of three correctional officers. Mr. Howie acknowledged the review would be *in camera*. The judge denied Mr. Howie's motion. The state Court of Appeal affirmed. In its opinion, Mr. Howie had failed to provide the superior court judge with good cause to believe the officers' personnel files contained material evidence. Mr. Howie argues the Court of Appeal's decision to deny *in*

ORDER – 19

*camera* review of Officer Sauceda's personnel file deprived him of due process of law.[3]

Mr. Howie sought access to the correctional officers' personnel files pursuant to a procedure established by state law.[4]  While he may not obtain relief under § 2254 for violations of state law, *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), he may obtain relief under § 2254 if he was deprived of his "due process right to receive exculpatory and impeachment evidence." *Owens v. Scribner*, No. CV-08-01287-JVS, 2010 WL 429933, at *24 (C.D.Cal. Feb. 4, 2010) (citing *Harrison v. Lockyer*, 316 F.3d 1063, 1066 (9th Cir.2003)).  However, in order to prevail, he must satisfy three requirements.  *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).  One of them is that the disputed evidence was favorable to him.  *Id.*  He may satisfy this requirement by showing that the evidence was either exculpatory or impeaching. *Id.*

Mr. Howie hoped *in camera* review of Officer Sauceda's personnel file would uncover evidence indicating other persons had filed complaints against Sauceda alleging retaliation.  Mr. Howie suspected Officer Sauceda had two motives for planting the bindle.  One of Mr.

---

[3]Now that Mr. Howie is in federal court, he has narrowed his request.  The only file that is in issue is Officer Sauceda's.

[4]Mr. Howie's motion for *in camera* review is called a "*Pitchess* motion."  The name is derived from *Pitchess v. Superior Court*, 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 (1974). The California legislature codified the *Pitchess* rule in the state's Penal and Evidence Codes.

ORDER - 20

Howie's theories was that Officer Sauceda had conspired with a female correctional officer.  Apparently, Mr. Howie had made derogatory comments about the woman.  He thought perhaps she had arranged for Officer Sauceda to plant the bindle.  Mr. Howie's other theory was that Officer Sauceda had planted the bindle because he refused to become an informant.  The Court of Appeal considered both theories. Insofar as the first was concerned, the Court of Appeal decided Mr. Howie had failed to present any evidence suggesting Officer Sauceda had conspired with the female officer.  Insofar as the second was concerned, the Court of Appeal decided Mr. Howie had failed to present any evidence Officer Sauceda attempted to pressure him into becoming an informant.

The Court of Appeal's interpretation of the record is not unreasonable under § 2254(d)(1) as long as it is plausible.  *Renico*, --- U.S. at ----, 130 S.Ct. at 1864.  And, indeed, its interpretation is plausible.  Mr. Howie has not identified any evidence in the record supporting his theories of retaliation.  Absent some credible evidence Officer Sauceda had a motive to retaliate, there is no reason to think his personnel file contains exculpatory or impeaching evidence.  In other words, there is no reason to question the Court of Appeal's conclusion that Mr. Howie's request for *in camera* review was little more than a "fishing expedition."  It follows the Court of Appeal did not deprive Mr. Howie of due process by upholding the superior court judge's decision to deny his request for *in camera* review.

**PUNISHMENT**

The judge sentenced Mr. Howie to a prison term of 25 years to

life for possessing 11 grams of marijuana in a state prison.  Mr. Howie argued on direct appeal that the sentence represented cruel and unusual punishment in violation of the Eight Amendment.  The Court of Appeal disagreed.  In reaching that conclusion, it considered the seriousness of the offense.  Although the Court of Appeal acknowledged 11 grams is a small quantity of marijuana, it pointed out Mr. Howie possessed the marijuana in a state prison.  In the Court of Appeal's opinion, this made the offense much more serious.  After evaluating the seriousness of the offense, the Court of Appeal turned to Mr. Howie's criminal history.  He had a number of predicate offenses. They included a 1981 robbery, a 1985 assault, and a 1991 robbery.  To the Court of Appeal, these convictions rebutted Mr. Howie contention that he is not a dangerous person.  Given Mr. Howie's criminal history and the seriousness of possessing a controlled substance in prison, the Court of Appeal concluded the term of imprisonment to which he was sentenced was not grossly disproportionate.  *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

Mr. Howie argues the Court of Appeal unreasonably applied clearly established federal law to the facts of his case.  In essence, he submits the Court of Appeal exaggerated the seriousness the crime of which he was convicted, failed to consider his personal circumstances, and overstated the risk he will engage in violent behavior if released.  To begin with, he emphasizes the small quantity of marijuana involved.  Just 11 grams.  In addition, he emphasizes his age.  He was born in 1954.  For him, a minimum term of 25 years imprisonment could be a life sentence.  Finally, he emphasizes he was

not armed when he committed the three offenses that figured heavily in the Court of Appeal's analysis.  He argues the Court of Appeal failed to place enough weight on this factor.

"The Supreme Court has held that the Eighth Amendment includes a narrow proportionality principle that applies to terms of imprisonment.  . . .  The principle does not require strict proportionality between crime and sentence, but rather it forbids only extreme sentences that are grossly disproportionate to the crime." *Taylor v. Lewis*, 460 F.3d 1093, 1097-98 (9th Cir.2006) (internal punctuation and citations omitted).  The Court of Appeal conducted a proportionality analysis.  Mr. Howie concedes as much.  Nevertheless, he objects to the weight the Court of Appeal assigned to various factors.  He argues the Court of Appeal placed too much weight upon the fact he possessed marijuana in a prison and too little weight upon the fact he was unarmed when he committed the predicate offenses.  Contrary to Mr. Howie, this does not mean the Court of Appeal's assessment was unreasonable.  A state court has considerable latitude in assessing the seriousness of a crime.  A state court reasonably may distinguish between possession of marijuana in prison and possession of marijuana "on the street."  Similarly, a state court has considerable latitude in assessing a convict's risk of future violent conduct.  A state court reasonably may conclude a person who has committed three crimes of violence represents a risk of future violent conduct even though he did not use a weapon when he committed the crimes in question.  Since the Court of Appeal's interpretation of the record is plausible, it reasonably concluded Mr. Howie's sentence is

ORDER - 23

not grossly disproportionate to the crime.

**CONCLUSION**

The respondent's attorney admits Mr. Howie has exhausted his state remedies with respect to five federal claims.  For the reasons set forth above, the Court rejects four of the five claims asserted by Mr. Howie.  The Court reserves ruling with respect to the remaining claim pending an evidentiary hearing.

**IT IS HEREBY ORDERED:**

1. The Court grants Mr. Howie's request for an evidentiary hearing with respect to whether his attorney conducted a reasonable investigation.  However, the hearing will be limited to resolving two issues:  (1) whether the medical technician examined Mr. Howie's hands and (2) assuming Mr. Dollison failed to interview the technician, why he failed to do so.

2. Within 21 days of entry of this order, counsel shall file a joint status report indicating whether the medical technician and Mr. Dollison are available to testify.  Assuming they are, the Court will thereafter inform counsel of when the evidentiary hearing will take place.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ____23rd____ day of September, 2010.

_____s/ Fred Van Sickle_____
Fred Van Sickle
Senior United States District Judge

ORDER - 24